IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| P.V., a minor, by and through his Parents, | : | CIVIL ACTION |
| Pedro Valentin and Yolanda Cruz, | : | |
| individually, and on behalf of all others | : | |
| similarly situated, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| The School District of Philadelphia, et al. | : | NO. 2:11-cv-04027 |
| | : | |
| Defendants. | : | |

MEMORANDUM

Legrome D. Davis, J.                                                     October 31, 2011

I.      Factual Background and Procedural History

        This lawsuit concerns the School District of Philadelphia's (the "District") treatment of,

and policies governing, school children with autism.  The four (4) named plaintiffs in the purported

class action Complaint, P.V., M.M., J.V., and R.S., are all autistic second- or third-grade students

at Richmond Elementary School, a Kindergarten through Grade 5 ("K-5") school in the District.

(Doc. No. 1 ¶¶ 15-18).  Plaintiffs contend that the District transfers students with autism

automatically from one school to another, simply because they complete a certain grade, more

frequently than the District transfers non-disabled students who therefore, unlike autistic children,

enjoy continued, uninterrupted attendance in K-5 schools or K-8 schools.  (Doc. No. 1 ¶ 1).  This is

1

particularly problematic because children with autism have difficulty transitioning from one environment to another.  (Doc. No. 1 ¶ 1).  Plaintiffs' Complaint alleges that the District transfers autistic students with little or no parental notice or involvement, and without the required consideration of the children's individualized circumstances.  (Doc. No. 1 ¶ 2).  Plaintiffs style these transfers as an "Automatic Autism Transfer Policy" (the "Policy"), a characterization that Defendants vigorously dispute.  (Doc. No. 1 ¶ 1; Doc. No. 12, at 10 (arguing that the alleged "Automatic Autism Transfer Policy" does not exist)).

According to Plaintiffs, the District's Policy violates the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 et seq. ("IDEA"), Chapter 14 of the Pennsylvania Code, Section 504 of the Rehabilitation Act, and Title II of the Americans with Disabilities Act ("ADA").  Plaintiffs seek relief on their own behalf, as well as class relief on behalf of all other students within the District who are or will be subject to the Policy. (Doc. No. 1 ¶ 3).  The plights of the four (4) named plaintiffs are said to illustrate the effect of the District's Policy on children with autism.

P.V., a third grader with autism, attends Richmond Elementary School.  At the end of the 2009-10 school year, the District announced to P.V.'s parents that P.V. would not be allowed to remain at Richmond to complete third grade during the 2010-11 school year.  (Doc. No. 1 ¶ 15).  P.V.'s family filed for an administrative hearing, requested "Stay Put" protection, and eventually secured a hearing officer's order which resulted in P.V.'s being allowed to attend Richmond for third grade.  (Id.)  On June 16, 2011, the District proposed transferring P.V. to McKinley Elementary School for fourth grade.  In contrast, the District does not require non-disabled rising fourth graders to transfer from Richmond Elementary or other K-5 schools in the District.  (Id.)

Like P.V., M.M. is a third grader with autism who attends Richmond Elementary School. (Doc. No. 1 ¶ 16).  In late spring of 2010, the District advised M.M.'s mother via his home-school notebook that he would not be allowed to remain at Richmond for his third grade year during the 2010-11 school year.  (Id.)  In early September, 2010, M.M.'s family filed for an administrative hearing and secured a hearing officer's "Stay Put" order which resulted in M.M.'s being allowed to stay at Richmond to complete third grade. (Id.)  At the time Plaintiffs filed their Complaint, M.M.'s mother did not know if M.M. would be allowed to return to Richmond for his fourth grade year.  (Id.)

Plaintiff J.V. is a second grader with autism who attends Richmond Elementary School. (Doc. No. 1 ¶ 17).  As of the filing of the Complaint in this matter, J.V.'s parents had received no Notice of Recommended Educational Placement / Prior Written Notice ("NOREP/PWN") that J.V. will be allowed to return to Richmond for the 2011-12 school year, absent their acceptance of a "settlement" offer made by the District in connection with a due process complaint that is currently pending.  (Id.)

Finally, Plaintiff R.S., like Plaintiff J.V., is a second grader with autism who attends Richmond Elementary School.  (Doc. No. 1 ¶ 18).  Similar to J.V., as of the filing of the Complaint, R.S.'s parents had received no Notice of Recommended Educational Placement / Prior Written Notice ("NOREP/PWN") that R.S. will be allowed to return to Richmond, absent their acceptance of a "settlement" offer made by the District in connection with a due process complaint that is currently pending.[1]  (Id.)

---

[1]According to Defendants, the District has now offered all four named plaintiffs a placement in Richmond Elementary's new 3-5 autism support classroom until the fifth grade.

(continued...)

These four (4) plaintiffs brought this suit against the School District of Philadelphia; the School Reform Commission; Arlene Ackerman, Superintendent of the School District of Philadelphia, in her official capacity; and Linda Williams, Interim Deputy Chief of Special Education for the School District of Philadelphia, in her official capacity, seeking various forms of relief from the allegedly illegal "Automatic Autism Transfer Policy." (Doc. No. 1, at 21-23). Most broadly, Plaintiffs ask the Court to declare that the Policy violates IDEA, Section 504, and the ADA, and may no longer be used. (Doc. No. 1, at 21). Plaintiffs emphasize that they cannot obtain this structural relief through an administrative hearing, so judicial intervention is necessary. Specifically, Brian Jason Ford, the hearing officer presiding over P.V.'s and M.M.'s administrative hearings, concluded that "the District violated the Parent's right to participation by reassigning the Student [P.V. and M.M.] to a different school building without sending IDEA-compliant prior written notice." (Doc. No. 1-4, at 15; Doc. No. 1-5, at 15). However, Ford noted that he "lacks authority to order wholesale changes to the District's procedures," so he merely encouraged the District "to alter its procedures on a broader scope, if only to avoid a plethora of identical claims from similarly situated students." (Doc. No. 1-4, at 15; Doc. No. 1-5, at 15).

Also on a broad scale, Plaintiffs request that we order the District to (1) create, maintain, and publicly disseminate a list of all the schools within the District that house any autistic support classroom; (2) develop a new policy, with parental involvement, to provide continuity of programming for students with autism; and (3) conduct Individualized Education Program ("IEP") meetings, again with parental involvement, before reassigning a child with autism to another

---

[1](...continued)
(Doc. No. 11, at 21).

school (Doc. No. 1, at 22).  More narrowly, Plaintiffs additionally request that we order the District to permit them to remain at Richmond Elementary unless otherwise agreed by the Plaintiffs' parents and the District.  (Doc. No. 1, at 21).

Procedurally, this matter remains in its infancy.  Defendants have not yet filed an answer to Plaintiffs' Complaint, we have not issued a scheduling order, discovery has not yet begun, and neither party has moved for class certification under Rule 23.[2]   At this early stage of the proceedings, Defendants have moved to strike Plaintiffs' class action allegations (Doc. No. 12), and to dismiss Plaintiffs' claims against all defendants pursuant to Federal Rule of Civil Procedure 12(b)(1) and the claims against the individual, official capacity defendants pursuant to Rule 12(b)(6).  (Doc. No. 11).  Plaintiffs oppose the motions, which are now ripe for disposition.  For the reasons discussed below, we deny Defendants' motion to strike and motion to dismiss.

II.   Legal Analysis

A.   Motion to Strike Class Action Allegations

According to Federal Rule of Civil Procedure 23(d)(1)(D), formerly Rule 23(d)(4), a court may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly" in conducting a class action.  One leading treatise describes the close interaction of this provision with the class certification decision:

> Subdivision (d)(4) [now (d)(1)(D)] is procedurally inseparable from subdivision (c)(1)(A), which provides that "when a person sues or is sued as a representative of a class, the court must—at an early practicable time—determine by order whether to certify the action as a class action." *After a determination has been made that a class action is not proper under Rule 23(c)(1), courts typically issue*

---

[2] Pursuant to our Order of September 28, 2011 (Doc. No. 15), Plaintiffs have thirty (30) days from the conclusion of discovery to move for class certification in this matter.

*an order requiring that the pleadings be amended to reflect that decision,*
although this often is done without reference to Rule 23(d)(4) [now (d)(1)(D)].

7B Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, & Richard L. Marcus, <u>Federal</u>
<u>Practice & Procedure</u> § 1795 (3d ed. 2011) (emphasis added).  This description of Rule
23(d)(1)(D) suggests that, in general, a court should wait to resolve a motion to strike class
allegations until someone moves for class certification.  Another well-respected treatise agrees,
noting that, while a "motion to strike class action allegations may properly be filed before
plaintiffs have filed a motion for class certification," "[i]f the viability of a class depends on
factual matters that must be developed through discovery, a motion to strike will be denied
pending the full-blown certification motion."  1 Joseph M. McLaughlin, <u>McLaughlin on Class</u>
<u>Actions</u> § 3:4 (7th ed. 2010).

        While the Third Circuit Court of Appeals has not yet directly addressed this issue, district
courts in the Third Circuit typically deny as premature motions to strike class action allegations
filed before the plaintiff moves for class certification.  For example, in <u>Korman v. Walking Co.</u>,
503 F. Supp. 2d 755 (E.D. Pa. 2007), the Eastern District of Pennsylvania observed that a
"motion to strike class allegations under Rule 23(d)(4) seems, for all practical purposes, identical
to an opposition to a motion for class certification."  <u>Id.</u> at 762.  The <u>Korman</u> court denied the
defendant's motion to strike class allegations as premature, concluding that there was "no good
reason for this case not to proceed down the normal path, i.e., with the Court setting a deadline
for Plaintiff to file a motion for class certification and the parties litigating the propriety of
maintaining the action as a class under the traditional Rule 23(c) rubric."  <u>Id.</u> at 763.

        Similarly, in <u>NBL Flooring, Inc. v. Trumball Ins. Co.</u>, Civil Action No. 10–4398, 2011
WL 4481918 (E.D. Pa. Sept. 27, 2011), the Eastern District of Pennsylvania denied the

6

defendants' motion to strike class allegations "because Defendants have not established that this case is among 'the rare few where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met.'" Id., at *1-2 (quoting Landsman & Funk PC, 640 F.3d at 93 n.30).  In analyzing the issue, the NBL Flooring court cautioned that "[a] motion to strike should not be granted when it is in the nature of an opposition to class certification, or if discovery is a necessary prerequisite to determining whether class certification is appropriate." Id., at *1.

Many other Third Circuit district court decisions also view pre-certification motions to strike class allegations as premature.  See, e.g., Mills v. Serv. First Credit Union, Civil Action No. 4:11–CV–686, 2011 WL 3236313, at *1 (M.D. Pa. July 28, 2011) (concluding that "the instant case is not one of the 'rare' or 'few' cases in which the court should dismiss or strike class claims with no discovery, solely on the basis of the pleadings," especially in light of the Third Circuit's "emphasi[s] [on] the importance of discovery as part of the class certification process."); Vlachos v. Tobyhanna Army Depot Fed. Credit Union, Civil Action No. 3:11–CV–0060, 2011 WL 2580657, at *2 (M.D. Pa. June 29, 2011) (denying defendants' motion to strike class allegations as premature because the plaintiff had not yet moved for class certification); Martin v. Ford Motor Co., 765 F. Supp. 2d 673, 680-81 (E.D. Pa. 2011) (holding that "[i]t would be premature to address the merits of Defendant's Motion [to strike class allegations] before a motion to certify a class is filed or even when discovery on this issue may be ongoing.").

Courts have good reason to decline to hastily strike class action allegations early in the litigation life cycle.  Specifically, unless the parties have completed discovery and at least one

party has moved for class certification, a court very rarely has the information necessary to conduct the "rigorous analysis" inherent in the class certification decision.  The Third Circuit recently articulated its concern with premature class certification in Landsman & Funk PC v. Skinder-Strauss Associates, 640 F.3d 72 (3d Cir. 2011).  In Landsman & Funk, the Third Circuit disapproved of the district courts' premature class certification decision at the motion to dismiss stage when there had been no motion for class certification and no discovery.  See id. at 93.  The Landsman & Funk court reasoned that such an early, uninformed evaluation of class certification in conjunction with a motion to dismiss did not comport with the "rigorous analysis" required to resolve every class certification question:

> To determine if the requirements of Rule 23 have been satisfied, a district court must conduct a "rigorous analysis."  In doing so, a "court may 'delve beyond the pleadings to determine whether the requirements for class certification are satisfied.'"...In most cases, some level of discovery is essential to such an evaluation.  In Weiss v. Regal Collections, 385 F.3d 337 (3d Cir.2004), we emphasized the importance of discovery as part of the class certification process.  "It seems appropriate," we said, "that the class action process should be able to 'play out' according to the directives of Rule 23 and should permit due deliberation by the parties and the court on the class certification issues."  Accordingly, "[a]llowing time for limited discovery supporting certification motions may ... be necessary for sound judicial administration."

Landsman & Funk, 640 F.3d at 93 (internal citations omitted).

Here, Defendants have not convinced us that this is one of the rare cases in which we should entertain a motion to strike class allegations before discovery even begins.  As discussed supra, Plaintiffs' Complaint alleges that the District operates pursuant to an "Automatic Autism Transfer Policy" under which the District transfers autistic students from one school to another, with little or no parental notice or involvement, more frequently than the District transfers non-disabled students.  Defendants vehemently deny the existence of any such policy, stating that

"plaintiffs use the phrase 'Automatic Autism Transfer Policy' to misdescribe that some schools have both the capacity and demand to accommodate autism support for all grades, while others have more limited capacity and demand and cannot accommodate autism support for all grades." (Doc. No. 12, at 10).  At this stage of the proceedings, we simply do not have the information necessary to analyze and resolve this factual dispute.  The nature, existence, scope, and implementation of the so-called "Automatic Autism Transfer Policy"[3] should certainly be considered in making a class certification decision in this matter, but the limited information available to us at this time curtails our ability to rigorously analyze the issue as required by Third Circuit law.  See Landsman & Funk, 640 F.3d at 93.

Defendants argue that Plaintiffs' claims are fundamentally unsuited to class-wide treatment.  Specifically, Defendants argue that the relief Plaintiffs seek precludes class certification because the requested relief  "boils down to forbidding any school that is incapable of offering autism support classes to all grade levels from offering [autism support] to any grade levels in that school, certainly not the desired outcome for all members of the class.  This is especially true because this result will require the elimination of autism support classes in many neighborhood schools."  (Doc. No. 22-2, at 3-4).  This argument fails to persuade us that Plaintiffs' claims and requested relief are "fundamentally unsuited to class-wide treatment."

As discussed *supra*, Plaintiffs request various forms of prospective relief, including a declaration that the "Automatic Autism Transfer Policy" violates IDEA, Section 504, and the

---

[3]Even if the District does not have an official "Automatic Autism Transfer Policy," discovery should still shed light on the frequency with which the District transfer autistic students vis-a-vis non-disabled students, as well as the procedure by which the District transfers students with autism.  This information may very well inform our class certification analysis and decision.

ADA, and may no longer be used; and an order directing the District to create, maintain, and publicly disseminate a list of all the schools within the District that house any autistic support classroom; develop a new policy, with parental involvement, to provide continuity of programming for students with autism; and conduct IEP meetings, again with parental involvement, before reassigning a child with autism to another school (Doc. No. 1, at 21-22). Plaintiffs certainly do not explicitly request that we forbid "any school that is incapable of offering autism support classes to all grade levels from offering [autism support] to any grade levels in that school" or eliminate "autism support classes in many neighborhood schools." Defendants merely speculate that forcing the District to change its practices regarding transferring autistic students will have the aforementioned results. Unlike Defendants, we will not jump to that conclusion at this time, early in the proceedings and before discovery has even begun.

Additionally, much of Plaintiffs' requested relief focuses on providing parents of autistic children with more information and a greater opportunity to get involved with their children's educational placement. We cannot see how this relief would divide the Plaintiffs' proposed class to such an extent that an inherent conflict of interest among the class members would prohibit class certification. Parents may or may not take advantage of the opportunity to participate in the decisions that affect their children's education. However, merely giving parents the option to do so, as well as the information necessary to make informed decisions, would not appear to be a particularly controversial or divisive issue among the autistic community.

For the aforementioned reasons, Defendants' motion to strike the class action allegations is denied as premature. As such, the Court does not address the merits of Defendants'

substantive arguments regarding the Rule 23 requirements of numerosity, commonality,

typicality, adequacy, cohesiveness, and predomination, at this time.

      B.    <u>Motion to Dismiss for Failure to Exhaust Administrative Remedies</u>

Defendants challenge our subject matter jurisdiction in this case under Rule 12(b)(1),

arguing that Plaintiffs have failed to exhaust their administrative remedies; Plaintiffs' claims are

moot because the District has offered the four (4) named plaintiffs placements in their preferred

school; and Plaintiffs lack standing because they have suffered no injury.  To withstand a Rule

12(b)(1) challenge to subject matter jurisdiction, "[t]he plaintiff has the burden of persuasion to

convince the court it has jurisdiction."  <u>Gould Elecs., Inc. v. Untied States</u>, 220 F.3d 169, 178 (3d

Cir. 2000).  However, "[a] claim may be dismissed under Rule 12(b)(1) only if it 'clearly appears

to be immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly

insubstantial and frivolous.'"  <u>Id.</u> (quoting <u>Kehr Packages, Inc. v. Fidelcor, Inc.</u>, 926 F.2d 1406,

1409 (3d Cir. 1991)).

Preliminarily, we note that "[a] Rule 12(b)(1) motion may be treated as either a facial or

factual challenge to the court's subject matter jurisdiction."  <u>Gould</u>, 220 F.3d at 176.  When

considering a facial attack, we "only consider the allegations of the complaint and documents

referenced therein and attached thereto, in the light most favorable to the plaintiff."  <u>Id.</u>

Conversely, when evaluating a factual challenge to our subject matter jurisdiction, we "may

consider evidence outside the pleadings."  <u>Id.</u>  Here, Defendants introduced extrinsic materials to

support their motion to dismiss, (<u>see</u> Doc. No. 11 Exs. A-F), and Defendants dispute the

existence of the "Automatic Autism Transfer Policy."  Therefore, the Court will treat

Defendants' 12(b)(1) motion as a factual attack and may consider materials outside the pleadings as appropriate.

We begin by considering Defendants' exhaustion arguments. In general, those who wish to bring claims under IDEA must first exhaust their administrative remedies before bringing a civil action in federal court. See 20 U.S.C. § 1415(i)(2)(A) ("Any party aggrieved by the findings and decision made under subsection (f) or (k) who does not have the right to an appeal under subsection (g), and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action..."); 20 U.S.C. § 1415(l); Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d 775, 778 (3d Cir. 1994) (declaring that "it is clear from the language of [IDEA] that Congress intended plaintiffs to complete the administrative process before resorting to federal court."). Relatedly, when plaintiffs file a civil suit under the Constitution, the ADA, Title V of the Rehabilitation Act, or other federal laws protecting the rights of children with disabilities, seeking relief also available under IDEA, those plaintiffs must exhaust their IDEA-created administrative remedies "to the same extent as would be required had the action been brought under" IDEA. See 20 U.S.C. § 1415(l).

However, our courts have crafted certain exceptions to IDEA's exhaustion requirement. Specifically, in the Third Circuit, claimants may bypass the administrative process: (1) where exhaustion would be futile or inadequate; (2) where the issue presented is purely a legal question; (3) where the administrative agency cannot grant relief; and (4) when exhaustion would work severe or irreparable harm upon a litigant. Beth V. v. Carroll, 87 F.3d 80, 88-89 (3d Cir. 1996). Additionally, federal court plaintiffs need not have exhausted their administrative remedies if "they allege systemic legal deficiencies and, correspondingly, request system-wide relief that

12

cannot be provided (or even addressed) through the administrative process." Id. at 89.   This

exhaustion exception "flows implicitly from, or is in fact subsumed by, the futility and

no-administrative-relief exceptions." Id.

The question then becomes how to properly define "systemic."  The Third Circuit has not

yet tackled the issue, but several courts have concluded that an IDEA claim is systemic "if it

implicates the integrity or reliability of the IDEA dispute resolution procedures themselves, or

requires restructuring the education system itself in order to comply with" IDEA, while a claim is

not systemic "if it involves only a substantive claim having to do with limited components of a

program, and if the administrative process is capable of correcting the problem." Doe v. Ariz.

Dep't of Educ., 111 F.3d 678, 682 (9th Cir. 1997); MG v. Caldwell-West Caldwell Bd. of Educ.,

No. 09–1869, 2011 WL 2607523, at *7 (D.N.J. June 30, 2011) (citing Grieco v. N.J. Dep't of

Educ., 2007 WL 1876498, at *6 (D.N.J. June 27, 2007)).

Here, two (2) of the named plaintiffs, P.V. and M.M., have sought and obtained at least

some relief from an administrative hearing officer.  The other two (2) named plaintiffs, J.V. and

R.S., had not participated in a due process hearing before bringing this suit.  Nevertheless, we

find that the named plaintiffs in this purported class action need not exhaust their administrative

remedies because "they allege systemic legal deficiencies and, correspondingly, request

system-wide relief that cannot be provided (or even addressed) through the administrative

process." Beth V., 87 F.3d at 89.

To reach this conclusion, we first recognize that the "systemic legal deficiency / system-

wide relief" exhaustion exception is simply a subset of the well-established "futility" and "no

administrative relief" exceptions.  See id.  If an educational system is broken and requires a

system-wide fix that an administrative hearing officer cannot provide, then requiring plaintiff

after plaintiff to exhaust his or her administrative remedy before filing suit would undoubtedly be

futile.  In this case, Plaintiffs' Complaint alleges that the District has an "Automatic Autism

Transfer Policy" pursuant to which the District  improperly transfers students with autism

without parental involvement and at a higher rate than the District transfers non-autistic students.

Plaintiffs seek various forms of broad-based relief from this allegedly illegal Policy.  Tellingly,

the hearing officer in P.V.'s and M.M.'s administrative hearings explicitly stated that he "lacks

authority to order wholesale changes to the District's procedures," so he simply encouraged the

District "to alter its procedures on a broader scope, if only to avoid a plethora of identical claims

from similarly situated students."  (Doc. No. 1-4, at 15; Doc. No. 1-5, at 15).

These facts illustrate the prototypical case in which a court should permit IDEA plaintiffs

to bypass IDEA's administrative dispute resolution process.  Two of the named plaintiffs, P.V.

and M.M., sought and obtained some relief from an administrative hearing officer, but the

hearing officer candidly admitted that he had no power to grant the kind of system-wide relief

requested in this suit.  Requiring P.V., or M.M., or J.V., or R.S., or any other autistic student in

the District, to repeatedly ask an administrative hearing officer for broad-based, structural relief

that he cannot provide seems wasteful and would ultimately prove fruitless.  Additionally, if each

autistic student with similar grievances "is forced to assert his or her claims through the

administrative process, there is a high probability that there will be inconsistent results and the

alleged 'systematic' deficiency" in the District's procedures regarding autistic students will likely

remain unaddressed and unresolved.  N.J. Prot. & Advocacy, Inc. v. N.J. Dep't of Educ., 563 F.

Supp. 2d 474, 477-78 (D.N.J. 2008).

Relying on several district court decisions, Defendants argue that exhaustion is not futile "if the administrative process is capable of providing Plaintiffs *some* form of relief."  See, e.g., Brandon V. v. Chichester School Dist., Civil Action No. 06-4687, 2007 WL 2155722, at *5 (E.D. Pa. July 25, 2007); Hesling v. Avon Grove School Dist., 428 F. Supp. 2d 262, 275 (E.D. Pa. 2006) (concluding that "[i]n light of the availability of some of the relief sought, exhaustion is required.").  We believe Defendants stretch the "some form of relief" line of cases too far.

The Third Circuit has never endorsed the general proposition that IDEA claimants must exhaust their administrative remedies whenever the administrative process can grant some, but not all, of claimants' requested relief.  In fact, the "some form of relief" doctrine grew out of a district court's attempt to distinguish the Third Circuit's decision in W.B. v. Matula, 67 F.3d 484 (3d Cir. 1995), that exhaustion is not required when "the only relief sought-compensatory damages-was unavailable in the IDEA administrative proceedings."  See Hesling, 428 F. Supp. 2d at 274-76.  Specifically, the Hesling court opined that the "Third Circuit's determination that exhaustion was excused in W.B. is not controlling here, as at least part of the relief sought by Ms. Hesling-declaratory relief for violation of her rights under the IDEA-is available through the statute's administrative proceedings."  Id. at 275.

The Hesling decision makes sense when put in context.  In W.B. v. Matula, the Third Circuit arguably left open the possibility that an IDEA claimant's request for compensatory damages may be sufficient to escape IDEA's exhaustion requirement.  Such a result would incentivize enterprising IDEA plaintiffs to seek compensatory damages in an effort to improperly circumvent the exhaustion requirement.  Read in this light, the Hesling court's statement that

15

exhaustion is required if the administrative process can afford claimants some form of relief may be seen as an attempt to discourage this strategic behavior.

However, taken too far, the "some form of relief" doctrine would eviscerate the futility exception to exhaustion. Administrative hearing officers can almost always fashion *some* kind of relief for an IDEA claimant. Therefore, if we made IDEA claimants exhaust their administrative remedies every time the administrative process could provide the claimants *some* relief, the futility exception would become a nullity. Additionally, the Supreme Court has made it clear that IDEA claimants "may bypass the administrative process where exhaustion would be futile *or inadequate*." Honig v. Doe, 484 U.S. 305, 326-27 (emphasis added). If read broadly, as suggested by Defendants, the "some form of relief" line of cases would improperly run afoul of the Honig decision.

Here, even though an administrative hearing officer may be able to provide Plaintiffs with some of their requested relief, the hearing officer admittedly cannot order the District to make the structural changes to the District's autistic student transfer procedures that Plaintiffs seek. Therefore, exhaustion would be "futile or inadequate," Honig, 484 U.S. at 326-27, so Plaintiffs properly bypassed the administrative process in this case. Because we have excused Plaintiffs from pursuing their claims administratively, we need not, and do not, decide whether Plaintiffs have in fact adequately exhausted their administrative remedies.

      C.     Plaintiffs' Claims Are Not Moot

A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Donovan v. Punxsutawney Area Sch. Bd., 336 F.3d 211, 216 (3d Cir. 2003) (citation omitted). The heart of a mootness inquiry is whether the court

"can grant effective relief." Id.  More specifically, "an offer for the entirety of a plaintiff's claim will generally moot the claim." Weiss v. Regal Collections, 385 F.3d 337, 342 (3d Cir. 2004). This flows naturally from basic mootness principles because parties do not have a "legally cognizable interest in the outcome" of a case once the alleged wrongdoer offers the aggrieved party complete relief.

In evaluating mootness, we must pay particular attention to circumstances in which the alleged wrongdoing recurs over a period of time.  In particular, the Supreme Court has determined that a case is not moot if the conduct complained of is "capable of repetition, yet evading review." Honig, 484 U.S. at 318-20 (citation omitted).  For conduct to be "capable of repetition, yet evading review," there must be a "reasonable expectation" or a "demonstrated probability" that the same controversy will recur. Id. at 318 n.6 (citation omitted).  "This exception applies when (1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again." Diop v. ICE/Homeland Sec., No. 10–1113, 2011 WL 3849739, at *4 (3d Cir. Sept. 1, 2011) (citations omitted).

Courts have repeatedly denied mootness challenges to IDEA claims, concluding that the conduct giving rise to such claims is capable of repetition but evades review. See, e.g., LV v. N.Y.C. Dep't of Educ., No. 03 Civ. 9917, 2005 WL 2298173, at *5 n.4 (S.D.N.Y. Sept. 20, 2005) (concluding "that defendants' conduct fell within the 'capable of repetition, yet evading review' exception, such that there exists a 'reasonable expectation' that plaintiffs could be subject to the same conduct again based on (1) plaintiffs' continued eligibility for educational services under the IDEA; (2) the nature of their disabilities; and (3) allegations that the delays are

17

due to defendants' systemic failure to ensure timely enforcement") (citation omitted); <u>D.E.R. v.</u>

<u>Bd. of Educ. of Borough of Ramsey</u>, No. Civ.A.04-2274, 2005 WL 1177944, at *4-5  (D.N.J.

May 18, 2005) (rejecting mootness challenge because "[a] school year is not long enough for the

administrative due process and judicial review proceedings provided under the IDEA to take

their course," and "the determination of the least restrictive environment ('LRE') is an issue that

must be addressed each time an IEP is prepared and has been a recurring issue throughout D.R.'s

education."); <u>Coale v. State Dep't of Educ.</u>, 162 F. Supp. 2d 316, 319 n.3 (D. Del. 2001)

(recognizing that "[i]t is well established that the passage of the school year at issue does not

moot an IDEA lawsuit.  Due to the inevitable delays in litigation, a contrary rule would make the

IDEA largely unenforceable. Thus, jurisdiction is deemed proper pursuant to the 'capable of

repetition yet evading review' exception to the mootness doctrine.").

     Here, Defendants argue that Plaintiffs' claims are moot because Defendants have offered

all four (4) named plaintiffs a position in an autism support classroom in their preferred school.

(Doc. No. 11, at 21).  This argument fails in several respects.  First, Defendants have not offered

Plaintiffs complete relief because Plaintiffs seek much more than temporary placement at their

preferred school.  Plaintiffs also seek system-wide changes in the way the District operates with

respect to autistic students.  (<u>See</u> Doc. No. 1, at 21-23).  Defendants have not offered Plaintiffs

such broad-based relief, so Plaintiffs retain a "legally cognizable interest in the outcome" of this

case.  <u>See</u> <u>Donovan</u>, 336 F.3d at 216.

     Second, Plaintiffs' claims fall squarely within the special "capable of repetition, yet

evading review" category of mootness cases.  In general, educational placements remain in effect

for only one school year.  Therefore, the Plaintiffs in this case will be subject to the District's

allegedly deficient autistic student placement policy each year.  We agree with our sister courts in LV v. N.Y.C. Dep't of Educ., D.E.R., and Coale that we cannot likely resolve IDEA-based disputes of this kind within a school year, and concluding that such cases are moot would render IDEA largely unenforceable, at least with respect to claims of systemic wrongdoing.  Since we have a "reasonable expectation" that the plaintiffs here will be subject to the same allegedly deficient  "Automatic Autism Transfer Policy" year after year, and the challenged Policy will evade review due to the short amount of time between placements (one year), the Plaintiffs' claims are not moot.  See Honig, 484 U.S. at 318-20.

      D.     Plaintiffs Have Standing

The three "irreducible" constitutional elements of standing are: (1) an injury in fact that is actual or imminent, not "conjectural" or "hypothetical"; (2) a causal connection between the injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant; and (3) a showing that it is likely, as opposed to merely speculative, that a favorable decision will redress the injury.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992).  Plaintiffs need not demonstrate actual harm or monetary damages to establish standing.  On the contrary, "the actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing."  Alston v. Countrywide Fin. Corp., 585 F.3d 753, 763 (3d Cir. 2009).

More specific to this matter, IDEA claimants who allege a statutorily deficient, systemic failure in educational policy have standing to challenge that policy because it will likely affect them year after year, until they complete their education.  For example, in CG v. Commonwealth of Pa. Dep't of Educ., No. 1:06-CV-1523, 2009 WL 3182599 (M.D. Pa. Sept. 29, 2009),

plaintiffs sought "an injunction requiring the Pennsylvania Secretary of Education to abandon the current funding formula and to distribute special-education funds based upon the actual number of disabled students and the actual cost of their special-education needs." Id., at *2.  The court held that the plaintiffs had standing because they alleged "that all Plaintiffs are subject to the systemic failure to provide FAPE caused by the funding formula." Id., at *3.  Similarly, the Eastern District of Missouri recently denied a motion to dismiss for lack of standing in a case in which the plaintiff alleged "past patterns of practice that have denied him access to a free appropriate public education and ongoing discrimination in education on the basis of his disability," in the absence of evidence to the contrary.  B.A. v. Missouri, No. 4:09CV1269, 2010 WL 1254655, at *4 (E.D. Mo. Mar. 24, 2010).

Here, Defendants argue that Plaintiffs do not have standing because (1) none of the Plaintiffs was transferred from his or her preferred school, negating any possible "injury in fact," and (2) the District has offered Plaintiffs placement in their preferred school until the fifth grade, so any injury and associated relief would be merely speculative.  This argument does not persuade us.  As discussed supra, an imminent injury, including an imminent violation of statutory rights under IDEA, confers standing.  See Alson, 585 F.3d at 763; CG, 2009 WL 3182599, at *3.  Even though Plaintiffs currently attend their preferred school, Plaintiffs will continue to be subject to the District's allegedly IDEA-deficient educational placement process from year to year.  As such, Plaintiffs' injuries are imminent, not merely conjectural or hypothetical, and a favorable court decision will likely redress the systemic failures, if any, in the District's practices regarding the educational placement and transfer of autistic students.  Therefore, under Lujan, Plaintiffs have standing to pursue their claims.

E.      Plaintiffs' Claims Against Individual Defendants in Their Official Capacity

Defendants ask us to dismiss all claims against the individual, official capacity defendants in this case as redundant of the claims against the District.  We decline to do so at this time.  To begin, we note that there is nothing inherently improper about naming both entity defendants and individual, official capacity defendants in an IDEA lawsuit.  N.J. Prot. & Advocacy, 563 F. Supp. 2d at 491-92 (acknowledging "that in many circumstances it is appropriate for a plaintiff to assert IDEA and Rehabilitation Act claims against individuals in their 'official capacities' as school administrators, school district personnel, or school board members.").

While some courts have dismissed claims against individual, official capacity defendants as redundant, they have done so after satisfying themselves that the remaining entity defendant(s) were willing to take responsibility for the individual defendants' action.  See Blunt v. Lower Merion School Dist.,  559 F. Supp. 2d 548, 567-68 (E.D. Pa. 2008) (dismissing individual defendants, in part because the "non-individual defendants do not seek to avoid liability by removing these individual defendants but instead acknowledge that any wrongdoing by those individual defendants is attributable to them.").  Additionally, retaining individual official capacity defendants in a case may streamline the discovery process.  See Abdullajeva v. Club Quarters, Inc., No. 96 CIV. 0383, 1996 WL 497029, at *1-2 (S.D.N.Y. Sept. 3, 1996) (noting that "[i]t is not anomalous to permit individuals to be named as defendants, even though no judgment can be collected from them," in part because the Federal Rules of Civil Procedure facilitate discovery against parties).

Here, the entity Defendant, The School District of Philadelphia, has not yet represented to the Court that the District will willingly accept the wrongdoing, if any, of the individual official

capacity Defendants, who are both School District officials.  Therefore, it would be imprudent to dismiss Plaintiffs' claims against the individual Defendants as redundant at this time.

III.     Conclusion

For the aforementioned reasons, Defendants' motions to file reply briefs (Doc. No. 21, Doc. No. 22) are GRANTED.  Defendants' motion to strike class action allegations (Doc. No. 12) is DENIED, and Defendants' motion to dismiss (Doc. No. 11) is also DENIED.

BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.