IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| P.V., a minor, by and through his Parents, Pedro Valentin and Yolanda Cruz, individually, and on behalf of all others similarly situated, et al., | : : : : : | CIVIL ACTION |
| Plaintiffs, | : : | |
| v. | : : | NO. 2:11-cv-04027 |
| The School District of Philadelphia, et al. | : : | |
| Defendants. | : | |

MEMORANDUM ORDER

AND NOW, this 1st day of March, 2012, upon consideration of Plaintiffs' Expedited Motion to Compel the Production of Documents and Responses to Interrogatories (Doc. No. 37) and Defendants' Opposition thereto (Doc. No. 40), it is hereby ORDERED that Plaintiffs' Motion to Compel (Doc. No. 37) is GRANTED IN PART and DENIED IN PART as follows:

1. Defendants shall produce all electronic discovery, including e-mails, by March 22, 2012.

2. The discovery schedule in this matter is amended as follows:

    a. Factual discovery shall close on April 30, 2012.

    b. Plaintiffs shall disclose expert report(s) by April 30, 2012, the close of factual discovery.

    c. Upon the completion of factual discovery on April 30, 2012, or at any time prior, the parties shall jointly advise the Court in writing as to whether this matter should be referred to the Honorable Timothy Rice, United States Magistrate Judge, for a settlement conference.

    d. Defendants shall disclose expert report(s) by May 14, 2012.

    e. Plaintiffs shall submit any rebuttal expert report(s) by May 28, 2012.

       f.       All discovery, including expert depositions, shall close on June 11, 2012.

       g.       Plaintiffs' motion for class certification shall be filed by June 25, 2012, with a response due July 9, 2012.

       h.       Dispositive motions shall be filed on or before June 25, 2012, with responses due July 9, 2012.

       i.       Upon the resolution of dispositive motions and Plaintiffs' class certification motion, the Court will schedule a final pretrial conference.

3.       The temporal scope of discovery is limited to the 2006-07 school year through the present. Defendants shall provide responsive information to Plaintiffs' discovery requests for the entirety of the aforementioned time period.

4.       Defendants shall (1) provide complete and specific answers to Plaintiffs' First Set of Interrogatories 1-3 and 8-10 and (2) produce documents responsive to Plaintiffs' First Set of Document Requests 5-7, 9-18, 20, 22-26, 33 and 35, *even if doing so entails examining each autistic child's file individually*. However, with respect to Document Request 10, Defendants need only produce NOREPs, not IEPs.

5.       With respect to Interrogatory 14, Plaintiffs' request for additional information about potential witnesses is denied.

## I.    Factual Background and Procedural History

This lawsuit concerns the School District of Philadelphia's (the "District") treatment of, and policies governing, school children with autism. The four (4) named plaintiffs in the purported class action Complaint, P.V., M.M., J.V., and R.S., are all autistic second- or third-grade students at Richmond Elementary School, a Kindergarten through Grade 5 ("K-5") school in the District. (Doc. No. 1 ¶¶ 15-18). Plaintiffs contend that the District transfers students with autism automatically from one school to another, simply because they complete a certain grade, more frequently than the District transfers non-disabled students who therefore, unlike autistic children, enjoy continued, uninterrupted attendance in K-5 schools or K-8 schools. (Doc. No. 1 ¶ 1). This is

particularly problematic because children with autism have difficulty transitioning from one environment to another. (Doc. No. 1 ¶ 1). Plaintiffs' Complaint alleges that the District transfers autistic students with little or no parental notice or involvement, and without the required consideration of the children's individualized circumstances. (Doc. No. 1 ¶ 2). Plaintiffs style these transfers as an "Automatic Autism Transfer Policy" (the "Policy"), a characterization that Defendants vigorously dispute.[1] (Doc. No. 1 ¶ 1; Doc. No. 12, at 10 (arguing that the alleged "Automatic Autism Transfer Policy" does not exist)).

According to Plaintiffs, the District's Policy violates the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 et seq. ("IDEA"), Chapter 14 of the Pennsylvania Code, Section 504 of the Rehabilitation Act, and Title II of the Americans with Disabilities Act ("ADA"). Plaintiffs seek relief on their own behalf, as well as class relief on behalf of all other students within the District who are or will be subject to the Policy. (Doc. No. 1 ¶ 3). The plights of the four (4) named plaintiffs are said to illustrate the effect of the District's Policy on children with autism.

On October 31, 2011, we denied Defendants' motion to dismiss and motion to strike class action allegations. (See Doc. No. 23). On December 14, 2011, following a Rule 16 conference with counsel for all parties, we entered a Scheduling Order providing that all factual discovery shall be completed by March 30, 2012. (See Doc. No. 34). Apparently, discovery has not gone smoothly to this point. Plaintiffs filed a motion to compel pursuant to Federal Rule of Civil

---

[1] The District refers to this transfer process as "upper leveling." According to the District, "it is only after the District considers the individual educational needs and interests of each and every one of its students with autism, that the District determines the schools in which they will be placed for a given school year." (Doc. No. 40, at 1).

Procedure 37(a), which Defendants oppose. For the reasons discussed below, Plaintiffs' motion to compel is granted in part and denied in part.

II.     Legal Analysis

The Federal Rules contemplate a broad scope of discovery in civil litigation. See Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . .Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."); Pacitti v. Macy's, 193 F.3d 766, 777-78 (3d Cir. 1999) ("It is well recognized that the federal rules allow broad and liberal discovery.") (citations omitted); 8 Charles Alan Wright et al., Fed. Prac. & Proc. Civ. § 2007 (3d ed. 2011) (noting that courts have repeatedly recognized the broad scope of permissible discovery and that "Rule 26(b) allows great freedom in discovery."). Of course, "discovery, like all matters of procedure, has ultimate and necessary boundaries." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). We exercise our considerable discretion to set those boundaries here. See Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983) (affirming that "[i]t is well established that the scope and conduct of discovery are within the sound discretion of the trial court.") (citation omitted).

Pursuant to Rule 37(a), Plaintiffs have moved to compel Defendants to produce various documents and responses to interrogatories. (See Doc. No. 37). We address each issue in turn. First, Plaintiffs complain that Defendants "have been unable to commit to a firm deadline" by which to produce the outstanding discovery, most notably e-mails and/or other electronic discovery. (Doc. No. 37, at 5). In particular, Plaintiffs assert that "Defendants to date have not produced *a single responsive email*." (Doc. No. 37, at 14) (emphasis in original). Defendants do

not dispute that assertion, but instead argue that "[d]ue to the overbroad and unduly burdensome[2] nature of Plaintiffs' discovery requests, the process of gathering and reviewing electronic data. . . has been much more time consuming" than initially expected.  (Doc. No. 40, at 5).  According to Defendants, they must locate and review "several thousand emails" to comply with their electronic discovery obligations.  (Id.).  Notably, Defendants' response to Plaintiffs' motion to compel does not include an estimate of how much longer this review process will take.

As noted *supra*, we issued a Scheduling Order setting case management deadlines in this matter on December 14, 2011, about two-and-a-half months ago.  According to that Order, discovery closes one (1) month from now, on March 30, 2012.  (Doc. No. 34).  At this point in time, over two-thirds of the way through discovery, we believe Plaintiffs are entitled to know when Defendants anticipate producing electronic discovery; "as soon as possible" is no longer an appropriate response.  Therefore, we order Defendants to produce all electronic discovery, including e-mails, by March 22, 2012.  This should give Defendants ample time to review several thousand e-mails, especially since Defendants have already had over two (2) months to get started.  Additionally, by this Order we have extended the deadline for factual discovery to April 30, 2012, and amended other deadlines accordingly to account for this new March 22nd deadline for Defendants' production of electronic discovery.

---

[2] While we must limit discovery if we find that the "burden or expense of the proposed discovery outweighs its likely benefit," see Fed. R. Civ. P. 26(b)(2)(C)(iii), Defendants' conclusory statements that Plaintiffs' discovery requests are overbroad and unduly burdensome do not persuade us.  See DL v. District of Columbia, 251 F.R.D. 38, 44 (D.D.C. 2008) (noting that a party objecting to discovery as unduly burdensome must submit affidavits or offer evidence which reveals the nature of the burden before the court will entertain the objection).

Second, the parties cannot agree on the appropriate temporal scope of discovery. Plaintiffs' interrogatories and document requests encompass the time period of 2001 through the present, but Defendants limited their responses and document production to the 2008-09 and subsequent school years. According to Plaintiffs, they instituted this suit on behalf of all children with autism in the District in grades kindergarten through eighth. (Doc. No. 1 ¶ 23). Therefore, Plaintiffs assert that they need information dating back to 2001 "to ascertain those students with autism in the District who have already been subject to the AATP and are thus properly class members." (Doc. No. 37, at 6). Plaintiffs also seek this relatively old information to gain an understanding of Defendants' policies and practices that are at issue in this suit. (Id.).

In response, Defendants argue that the request (1) is overly broad and unduly burdensome because locating the documents would be virtually impossible given the District's high rate of employee turnover; (2) improperly encompasses many students who cannot be potential class members because the statute of limitations has already run on their claims, if any exist, and (3) lacks relevance because the old information could only relate to how the District used to make school placement decisions, while the instant suit challenges the District's current practices. (See Doc. No. 40, at 6-7). As such, Defendants ask us to limit the scope of discovery to the 2008-09 school year and onward. (Id. at 6).

We see some merit in both parties' positions. As the Supreme Court recognized in Oppenheimer Fund, "it is proper to deny discovery of matter that is relevant only to. . .events that occurred before an applicable limitations period, unless the information sought is otherwise relevant to issues in the case." 437 U.S. at 352 (citation omitted). However, relevant information may be remote in time from the events that actually precipitated the suit in question. See 6-26

Patrick E. Higginbotham, Moore's Fed. Prac. Civ. § 26.41 (2012).  In particular, "[t]he time bar of an applicable statute of limitations for the filing of an action based on particular events does not necessarily foreclose discovery of information concerning those events."  Id.  This is true because earlier events "may constitute relevant background evidence. . .may show knowledge or intent, or may otherwise be relevant to the claim or defense of a party, as well as to the subject matter involved in the pending action, even though they, themselves, cannot serve as a basis for recovery."  Id.

      As evident from the preceding discussion, the proper temporal scope of discovery may vary from case to case.  See 8 Charles Alan Wright et al., Fed. Prac. & Proc. Civ. § 2008.5 (3d ed. 2011) (observing that "it is impossible to offer a general rule about the time period suitable for attention during discovery.").  In setting time limits for discovery, courts generally balance the likelihood of unearthing relevant information against the burden of locating and furnishing that information.  Miller v. Hygrade Food Prods. Corp., 89 F. Supp. 2d 643, 657 (E.D. Pa. 2000) (citations omitted).  In this case, as in most cases, finding and sifting through relatively old documents and information is comparatively more burdensome and less likely to prove fruitful.  For example, the information may be in the hands (or minds) of former District teachers and administrators who have long since moved on.  Further, the District's business is educating students, not maintaining pristine records from many years ago in anticipation of litigation.  Finally, the District correctly points out that older information is less likely to bear on the District's recent and current practices of transferring students with autism, i.e., the crux of this lawsuit.

      On the other hand, Plaintiffs are entitled to some background discovery on the duration of and modifications to Defendants' policies and practices that are at issue in this suit.  See Manning

v. General Motors, 247 F.R.D. 646, 652-53 (D. Kan. 2007) (noting that "courts commonly extend the scope of discovery to a reasonable number of years both prior to and following" the liability period); Kane v. United Indep. Union Welfare Fund, No. 97–1505, 1997 WL 611584, at *3 (E.D. Pa. Sept. 23, 1997) (recognizing that "[i]t is not uncommon to have discovery for a time preceding the statutory limitations period," in part because of "the possibility of the statute of limitations being tolled."); DL, 251 F.R.D. at 44-45 (permitting discovery for a five-year period prior to the initiation of an IDEA action). After weighing the likely value of the information sought against the burden imposed upon Defendants, we limit the temporal scope of discovery to the 2006-07 school year through the present. Defendants shall provide responsive information to Plaintiffs' discovery requests for the entirety of the aforementioned time period.

Third, Defendants have told Plaintiffs that the District does not maintain the requested data regarding the number of students with autism who have been upper-leveled. Plaintiffs do not believe them and claim that Defendants have either withheld documents or failed to diligently search for the information. After parsing Defendants' response, it has become clear to us that the District likely does have, or can generate, the requested information by looking through the files of the autistic students in the District. Plaintiffs correctly assert that the District is required by law to send the State the numbers of children with autism for a "child count" on a yearly basis. For example, the District's count for 2011-12 shows 2,062 students with autism in grades K-12. (Doc. No. 40-5 Ex. D). To make this count, the District must know, or at least could readily determine, which students in the District have autism. In fact, the District does not flatly deny that it possesses the requested information, but rather states that it does not maintain the data *in a searchable database*. (Doc. No. 40, at 9).

Information about the upper-leveling of autistic students goes to the very heart of Plaintiffs' case. The merit of Plaintiffs' claims, which has yet to be determined, does not depend on the manner in which the District organizes its files. The fact that the District does not maintain a searchable database with the requested information does not mean that Defendants can simply throw up their hands and refuse to produce relevant discovery. We recognize that looking through several thousand student files will take some work, but as noted *supra*, the information therein is likely to be highly relevant. In other words, it is beyond dispute that information regarding the *transfer of autistic students* is critically important in a putative class action such as this one, which challenges the District's policies and procedures *for transferring autistic students*. As such, defendants shall provide complete and specific answers to Plaintiffs' First Set of Interrogatories 1-3 and 8-10 and produce documents responsive to Plaintiffs' First Set of Document Requests 5-7, 9-18, 20, 22-26, 33 and 35, even if doing so entails examining each autistic child's file individually. However, given the nature of this case, we believe that NOREPS[3] are substantially more likely to contain relevant information than IEPs are. Additionally, given the length of a typical IEP, we believe requiring Defendants to examine the entire IEP for each and every autistic child in the District constitutes an undue burden. Therefore, with respect to Document Request 10, Defendants need only produce NOREPs, not IEPs.

Relatedly, the District contends that, while it maintains a form letter used to generate notices sent to parents of students who are upper-leveled, it does not keep copies of the notices themselves. (Doc. No. 40, at 10-11). We are somewhat skeptical of this assertion. Looking at the format of a completed notice, it appears that someone in the District prepares the actual notices

---

[3]NOREP stands for Notice of Recommended Educational Placement.

sent out to parents by computer, on a word processing program.  (See Doc. No. 37-7 Ex. G).  Unless the District deletes each letter after preparing it, we see no reason why the completed letters would not be saved on a computer somewhere.  Therefore, the District shall resume its search for these letters and produce any that it finds.

Fourth, Plaintiffs object to Defendants response regarding students with autism who were dissatisfied with the District's upper-leveling policy.  Specifically, Defendants responded to the document request in question by asserting that "the District is *not generally informed* of the reasons that a particular student has ceased enrollment in the District." (emphasis added).  In their brief opposing this motion to compel, Defendants amended that response to state that "[t]he District does not possess documents sufficient to show the number and identity of all Students with autism who have ceased enrollment in the District in order to obtain private education within eighteen (18) months following upper-leveling or notice of intent to upper-level." (Doc. No. 40, at 11).  Perhaps the District does not have the necessary information to identify *all* such students, but surely the District can identify some, e.g., by looking through their files on autistic students.  As discussed *supra*, Defendants shall produce documents responsive to Plaintiffs' requests, even if doing so requires someone to review each autistic child's file individually.  If the District cannot determine the precise reason why a particular autistic student was transferred, or why a parent complained about a transfer, or the process by which the District upper-leveled a student, then the District should err on the side of caution and produce all the documents discussing or mentioning the transfer.

Fifth, Plaintiffs seek additional information on Defendants' potential witnesses.  In particular, Plaintiffs asked for addresses and telephone numbers (home and work), among other

things. (Doc. No. 37, at 11). Defendants provided the names, job titles, and work addresses of numerous District employees, but did not provide phone numbers or home addresses. (Doc. No. 40, at 13). According to Defendants, the District employs all the named individuals so they are likewise represented by Defendants' counsel. Therefore, if Plaintiffs wish to speak with the individuals in question, they may do so through Defendants' counsel or via deposition. (Id.). We agree with Defendants' position that they have produced adequate identifying information regarding potential witnesses. We will not require Defendants to turn over the phone numbers and home addresses of these District employees.

Finally, Plaintiffs contend that Defendants have given only a partial response to Plaintiffs' request for information about buildings and autism support classrooms in the District. Defendants counter that they have produced all the documents in their possession that are responsive to Plaintiffs' request. We have no evidence refuting the Defendants' assertion on this point, and we will not order Defendants to produce information they do not have. Of course, to the extent that the District does have or later finds relevant documents and information, e.g., about changes the District made with regards to autism support at each school and the reasons for such changes, the District shall produce the material. The same goes for upper-leveling process information. If Defendants have not yet produced all documents in their possession related to the District's policies, procedures, and decision-making processes pertaining to the upper-leveling of students with autism, Defendants shall do so in short order.

III.     Conclusion

For the aforementioned reasons, Plaintiffs' motion to compel (Doc. No. 37) is granted in part and denied in part.

BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.